**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re Application of COOK )<br>DEUTSCHLAND GMBH, Petitioner, For )<br>An Order Pursuant To 28 U.S.C. § 1782 To )<br>Take Discovery, Pursuant To Federal Rules )<br>of Civil Procedure, Of Respondents Boston )<br>Scientific Scimed, Inc. And Boston )<br>Scientific Corp. For Use In A Foreign )<br>Proceeding. ) | Misc. No. _____ |

**COOK DEUTSCHLAND GMBH'S APPLICATION**
**UNDER 28 U.S.C. § 1782 FOR AN ORDER TO TAKE**
**DISCOVERY FOR USE IN A FOREIGN PROCEEDING**

Petitioner Cook Deutschland GmbH ("Cook Deutschland") makes this application for

an order pursuant to 28 U.S.C. § 1782 ("Section 1782 Application") authorizing its attorneys

to issue and serve a subpoena under Federal Rule of Civil Procedure 45 upon respondents

Boston Scientific Corp. ("BSC") and Boston Scientific Scimed Inc. ("BSSI") (collectively, the

"Boston Respondents" or "Respondents"), compelling them to produce documents for use in

a pending foreign proceeding, *Boston Scientific Scimed, Inc. v. Cook Deutschland GmbH et

al.*, No. 4c O 11/22 (the "German Action").

## I.    PRELIMINARY STATEMENT

1.      Cook Deutschland is a defendant in the German Action, along with certain

European affiliates.  BSSI is the plaintiff in the German Action.  BSSI has accused Cook

Deutschland's product the Instinct® Endoscopic Clip (the "Instinct Clip") of infringing patent

claims directed to a clipping device that provides "user feedback" to users of the device.

2.      In its infringement allegations, BSSI contends that the Instinct Clip provides

"user feedback."  BSC and/or BSSI are in possession of documents and information, however,

that contradict BSSI's allegations in the German Action and demonstrate that Cook Deutschland's product does not provide the claimed "user feedback." These materials were previously produced by Respondents in connection with proceedings in the United States (in this District and the Southern District of Indiana), and are the materials that Cook Deutschland seeks through this application.

3. These materials were also produced in a related case in the United Kingdom (UK), where BSSI is asserting the same patent and making the same allegations – that the Instinct Clip infringes the same patent claims requiring "user feedback." There, as in the German Action, Boston Scientific declined to voluntarily produce relevant documents in their possession contradicting their assertion that the Instinct Clip provides "user feedback." After hearing Boston Scientific's objections, the UK High Court ordered production and ruled that disclosure of the materials requested there (and in this application) would be reasonable and proportionate.

4. Unlike in the UK, pre-trial discovery is not available in German litigation. In view of the UK High Court's order, Cook Deutschland reached out to BSSI and asked if it would agree that the parties' respective UK disclosures would be made available for use in the German Action as well. To date, BSSI has not agreed.

5. Cook Deutschland, thus, now seeks access to these highly relevant documents through this Section 1782 Application for use in the German Action to assist in Cook Deutschland's defense. In particular, Cook Deutschland seeks the Court's authorization to serve a subpoena on Respondents seeking these documents. Although Section 1782 Applications like this one may be granted on an *ex parte* basis, Cook Deutschland believes the most efficient way to resolve this application is for the Court to issue an order to show cause

with notice to Respondents to set a schedule for a decision on the application and any objections by Respondents to the subpoena.[1]   The same approach has been followed with respect to other Section 1782 Applications.  *See, e.g.*, *Nikon Corporation v. Globalfoundries U.S., Inc.*, Case No. 5:17-mc-80071-BLF, D.I. 6, slip op. (N.D. Cal. June 13, 2017).

## II.   SUMMARY OF LEGAL ARGUMENT

6.      Pursuant to 28 U.S.C. § 1782 ("Section 1782"), Cook Deutschland seeks to discover documents and information in the possession, custody, or control of the Boston Respondents via a subpoena to be issued by this Court.[2]

7.      The requested documents concern products distributed by Cook Deutschland and/or its affiliates, including the Instinct Clip and the second generation of the Instinct Clip known as the Instinct Plus™ Endoscopic Clipping Device (the "Instinct Plus Clip" (collectively with the "Instinct Clip," the "Instinct Clips")), and whether those products provide user feedback, as described and claimed in European Patent No. 3 443 915 B1 ("EP 915") (which BSSI is currently asserting against Cook Deutschland in the German Action).[3]

8.      A key aspect of EP 915 is the subjective experience of the user who, in operating the claimed apparatus, is made aware when certain "decision configuration" and "separation" elements of the claims occur by experiencing first and second "user feedback[s]," respectively.

---

[1] A proposed Order To Show Cause Why Discovery Should Not Be Ordered Pursuant To 28 U.S.C. § 1782 is attached to this application as Exhibit C.

[2] The Declaration of Dr. Christine Kanz in Support of Cook Deutschland's Section 1782 Application has been filed contemporaneously with this Application and will be referred to herein as the "Kanz Decl."  All exhibits referenced herein are attached to the Declaration of Mary LaFleur in Support of Cook Deutschland's Section 1782 Application, which has also been filed contemporaneously with this Application.

[3] Kanz Decl. at ¶¶ 9-13.

In the German Action, BSSI alleges that the Instinct Clip provides both of the claimed "user feedback[s]."[4]

9.     However, BSC and/or BSSI have in their possession documents that contradict BSSI's allegations in the German Action and indicate that users of the Instinct Clip **do not** experience the claimed feedback.[5]   Resolution of the German Action will be significantly advanced by the production of these documents possessed by and obtainable from the Boston Respondents.

10.     Congress enacted Section 1782 to address circumstances like these by providing a mechanism through which a party may take discovery in the United States to obtain information relevant to the resolution of foreign litigation.   *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004) ("[Section] 1782(a)'s objective [is] to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws.").

11.     Cook Deutschland's application for discovery satisfies the requirements of Section 1782: (1) this is the district "in which [each of the Boston Respondents] resides or is found"; (2) Cook Deutschland seeks the discovery for use "in a proceeding in a foreign or international tribunal," specifically in the German Action; and (3) Cook Deutschland qualifies as an "interested person" in the foreign proceeding, as it is a defendant in the German Action.

12.     Additionally, all four *Intel* "factors" that the Supreme Court identified to guide courts' discretion in analyzing applications under Section 1782 favor granting Cook

---

[4] *Id.* at ¶¶ 9-10; Ex. 2 at Claim 1, col. 20, ll. 31-50 (EP 915); Ex. 1 at 34-38 (Complaint in the German Action).

[5] Kanz Decl. at ¶¶ 10-13.

Deutschland's request.  First, although BSSI is a party to the German Action, the German legal system does not have a mechanism that Cook Deutschland can use to obtain the requested discovery.  Second, courts in Germany have been historically receptive to assistance from U.S. federal courts, and U.S. courts routinely grant discovery pursuant to Section 1782 for use in litigation in Germany.  Third, this application is not made as an attempt to circumvent the discovery procedures of the German Action.  Fourth, Cook Deutschland's document requests are limited, not unduly burdensome, and will enhance the efficiency of the process for the parties and the court in the German Action.

13.     Section 1782 proceedings are routinely filed without notice to the respondents, resulting in Section 1782 discovery orders being granted in *ex parte* proceedings.  However, these *ex parte* proceedings are then typically followed by the respondent filing a motion to quash the resulting subpoena for document production, requiring the court to revisit the *ex parte* discovery order.  To make the most efficient use of the Court's time, and in the hope of obtaining the requested documents sooner and in advance of the April 2023 trial in the German Action, Cook Deutschland respectfully requests an order to show cause with notice to BSC and BSSI to set a schedule for a decision on the application and any objections by BSSI and BSC to the subpoena.[6]  *See generally Nikon Corporation v. Globalfoundries U.S., Inc.*, Case No. 5:17-mc-80071-BLF, D.I. 6, slip op. (N.D. Cal. June 13, 2017) (following the same approach proposed by Cook Deutschland here).  In conjunction with filing of this application, Cook Deutschland is also providing a copy of this application and the associated filings to

---

[6] A proposed Order To Show Cause Why Discovery Should Not Be Ordered Pursuant To 28 U.S.C. § 1782 is attached to this application as Exhibit C.

Respondents' counsel of record in the U.S. Proceedings, as well as on Boston's counsel in the UK Action and in the German Action.

14.     This application is supported by the points and authorities below, and by the declaration of Mary LaFleur and the declaration of Dr. Christine Kanz, both filed concurrently with this application.  The proposed order and subpoena are attached to this application as Exhibits A and B, respectively.

## III.     BACKGROUND

### A.     The Parties And Technology

15.     Cook Deutschland is a German company, and a member of the Cook Medical group of companies, which includes entities that develop, manufacture, and supply medical devices, including devices in the field of gastroenterology.[7]  Certain entities within the Cook Medical group of companies developed, manufacture, and supply the Instinct Clip and Instinct Plus Clip, and Cook Deutschland distributed the Instinct Clip in Germany.[8]

16.     The Respondents are part of the Boston Scientific group of companies.  BSC is "a corporation organized and existing under the laws of the State of Delaware."[9]  BSSI claims to be "a wholly owned subsidiary of BSC" that purportedly "develops and manufactures endoscopic products for the treatment of diseases of the digestive system, including hemostatic

---

[7] Kanz Decl. at ¶ 5.

[8] *Id.*

[9] Ex. 12 at ¶ 2 (Complaint in the U.S. Proceedings).

clips, that BSC distributes."[10]  One such product that BSC and its European affiliates market is an endoscopic clip called the Resolution Clip.[11]

17.     The Instinct Clips and Resolution Clip are devices known as endoscopic clips. In use, an endoscopic clip is mounted on the end of a long, tubular delivery device and passed through an endoscope to a treatment site, typically the site of a gastrointestinal bleed.[12]  Using a remote handle, the jaws of the clip are opened, moved into the desired position, and closed onto tissue to achieve hemostasis (the stopping of bleeding).[13]  The clip is then disconnected from the delivery device and remains in the body while the delivery device is removed from the endoscope and the patient.  For illustration, the Instinct Plus Clip device is depicted below.[14]



---

[10] *Id.* at ¶ 3.

[11] *Id.* at ¶ 10.

[12] Kanz Decl. at ¶ 7.

[13] While endoscopic clips are approved for indications other than gastrointestinal bleeding, the principle of grasping tissue between the jaws of the clips remains the same.  *See also* Kanz Decl. at ¶ 7.

[14] Image from https://www.cookmedical.com/products/5eecfede-8a52-4614-9ce3-ce5103e9dd0b/#.  *See also* Kanz Decl. at ¶ 7.

**B.      The EP 915 Patent**

18.      EP 915 is entitled "Apparatus for Deployment of a Hemostatic Clip," and it

issued on March 24, 2021 from an application filed on September 30, 2004.[15]  EP 915 identifies

BSSI as the sole proprietor.[16]

19.      Independent claim 1 of EP 915 – the sole independent claim – reads as follows:

An apparatus for deployment of a hemostatic clip comprising:

a handle assembly (102);

a shaft (104) connected to a distal portion of the handle assembly (102);

a clip assembly (106) releasably coupled the shaft (104), the clip assembly (106)
including clip arms (208) and a capsule (200) cooperating with the clip arms (208) <u>to
provide a first user feedback indicating a decision configuration of the clip assembly
(106)</u>;

a control wire (118) extending from the handle assembly (102) and coupled to the clip
assembly (106) via a connector to maintain the clip assembly (106) coupled to the shaft
(104), wherein the connector is detachable from the clip assembly (106) <u>to provide a
second user feedback indicating separation of the clip assembly (106) from the shaft
(104)</u>;

wherein the clip arms (208) comprise stop shoulders (222) engaging a distal portion of
the capsule (200) to provide the first user feedback during proximal movement of the
control wire (118);

**characterized in that**

the decision configuration indicates a position of the control wire (118) beyond which
further proximal movement of the control wire (118) precludes return of the clip arms
(208) to an open configuration by a reversed movement of the control wire (118).[17]

20.      As shown above, the claims of EP 915 all require an "apparatus for deployment

of a hemostatic clip" that provides "user feedback," to alert the user when the apparatus is at

---

[15] Ex. 2 at cover (EP 915).

[16] *Id.*

[17] *Id.* at Claim 1, col. 20, l. 31 to col. 21, l. 3 (<u>emphasis added</u>).

specifically claimed stages of the deployment process.  In particular, the claimed apparatus includes a "clip assembly 106" and a "shaft 104" that provide: (1) a "first user feedback" indicating to the user when a "decision configuration" has been reached; and (2) a "second user feedback" indicating to the user "separation of the clip assembly (106) from the shaft (104)."[18]  Thus, a key aspect of the claims of EP 915 is the subjective experience of the user who, in operating the claimed apparatus, is made aware when the claimed "decision configuration" and "separation" occur by experiencing first and second "user feedback[s]," respectively.[19]

### C.    The German Action

21.    On March 7, 2022, BSSI filed a patent infringement action in the Düsseldorf Regional Court against Cook Deutschland and two other Cook entities (Cook Medical EUDC GmbH and Cook Medial Europe Ltd.) seeking damages and injunctive relief for the alleged infringement of certain claims found in EP 915.[20]

22.    As support for its patent infringement allegations in the German Action, BSSI contends that the structure of the Instinct Clip will cause feedback "perceptible to the user" at the various claimed stages of clip deployment.[21]

---

[18] *Id.* at Claim 1, col. 20, ll. 31-50.

[19] Kanz Decl. at ¶ 9.

[20] Ex. 1 (Complaint in the German Action); *see also* Kanz Decl. at ¶ 8.

[21] Ex. 1 at 34-38 (Complaint in the German Action); *see also* Kanz Decl. at ¶ 10.

23.     However, BSSI has in its possession documents that contradict those contentions.[22]  For example, BSSI has documents reporting on the experiences of actual users of the Instinct Clip that indicate that the Instinct Clip does not provide user feedback.[23]  These documents also suggest that BSSI has relied on the Instinct Clip's lack of user feedback to distinguish Boston Scientific's own Resolution Clip over the Instinct Clip in the market.[24]  This can be seen, for example, in documents filed by the Boston Respondents in parallel proceedings in the United States, as further described below.

### D.     The Related Proceedings

#### 1.     The United States Proceedings

24.     In 2015, Respondents filed suit against Cook Group Incorporated and Cook Medical LLC in this Court, accusing the Instinct Clip of infringing four U.S. patents related to endoscopic clips.[25]  One of the asserted patents is related to EP 915.[26]  In 2017, the case was transferred to the Southern District of Indiana where it is currently pending.[27]

25.     As part of the U.S. Proceedings, Respondents produced documents concerning the Instinct Clip and the Instinct Plus Clip.[28]  Respondents have publicly filed several of these

---

[22] Kanz Decl. at ¶¶ 10, 12 (discussing Exs. 3-5 (Respondents' public filings re "user feedback")).

[23] *Id.*

[24] *Id.*

[25] *See Boston Scientific Corporation et al. v. Cook Group Incorporated et al.*, Civil No. 1:15-cv-00980 (D. Del.).

[26] Kanz Decl. at ¶ 11.

[27] *Boston Scientific Corporation et al., v. Cook Group Incorporated et al.*, 1:17-cv-03448 (S.D. Ind.).

[28] Kanz Decl. at ¶ 12.

documents with the court in the U.S. Proceedings that demonstrate that, contrary to BSSI's contentions in the German Action, the Instinct Clip does not provide user feedback as claimed in EP 915.[29]

26.     These documents demonstrate that Respondents have information in their possession that is relevant to BSSI's allegation in the German Action that the Instinct Clip provides "user feedback" in the manner claimed in EP 915.[30]  First, this information appears to contradict BSSI's infringement allegations in the German Action by demonstrating that the Instinct Clip fails to provide user feedback in the manner claimed in EP 915.  Second, this information demonstrates that Boston Scientific knows that the Instinct Clip fails to provide user feedback in the manner claimed, as evidenced by its reliance on the lack of user feedback in the Instinct Clip to distinguish the Resolution Clip over the Instinct Clip in the marketplace.

27.     Each of the documents appears to be a presentation prepared by Boston Scientific to brief its sales force on the characteristics of the Instinct Clip and how it is different from the competing Boston Scientific Resolution Clip.[31]  These documents indicate that: (1) Boston Scientific has carried out analyses of the structure and operation of the Instinct Clip; (2) Boston Scientific has received communications from actual users of the Instinct Clip indicating that the device does not provide user feedback as claimed; and (3) other, similar analyses may have been conducted (and other, similar communications received from clinicians) by Boston Scientific in relation to both the Instinct Clip and the Instinct Plus Clip.[32]

---

[29] *Id*. (discussing Exs. 3-5 (Respondents' public filings re "user feedback")).

[30] *Id.* at ¶ 13.

[31] *Id.*

[32] *Id.*

28.     To date, BSSI has not disclosed any of the above documents in the German Action, even though these documents contradict BSSI's positions in that action.[33]  On the other hand, BSSI has been ordered to produce these and other relevant documents in the UK proceedings where BSSI also alleges infringement of EP 915 by the Instinct Clip, as well as the Instinct Plus Clip.[34]  These UK proceedings are further described below.

### 2.     The United Kingdom Proceedings

29.     In addition to the German Action, BSSI is also currently asserting EP 915 in the United Kingdom against another member of the Cook Medical group of companies, Cook (UK) Limited, in the case captioned, *Cook (UK) Limited v. Boston Scientific Limited et al.*, Case No. HP-2022-000007 (the "UK Action").[35]

30.     In view of the publicly-disclosed documents in the U.S. Proceedings described above, Cook (UK) Limited used formalized discovery means in the UK High Court to obtain disclosure from Boston Scientific Limited, Boston Scientific Medical Device Limited, and BSSI (collectively, the "Boston UK Defendants") regarding the issue of whether the Instinct Clip and Instinct Plus Clip provide "user feedback."[36]  The Boston UK Defendants initially resisted providing any such disclosure.[37]  On August 1, 2022, however, the High Court ruled over the Boston UK Defendants' objections that it was "reasonable and proportionate" for the Boston UK Defendants to disclose materials relevant to the "user feedback" issue, finding that

---

[33] *Id*. at ¶ 14.

[34] *Id.* at ¶¶ 6, 15.

[35] *Id.* at ¶ 6.

[36] *Id*. at ¶ 15.

[37] *Id.*

"the information in these documents could . . . potentially be of probative value in the context of this case."[38]   The parties subsequently corresponded in an attempt to agree on the precise scope of the Boston UK Defendants' disclosure.

31.     Following negotiations between the parties to the UK Action regarding the precise scope of the Boston UK Defendants' disclosure, the High Court issued its final Order for Directions on August 30, 2022, ordering the Boston UK Defendants to disclose five categories of materials identified using eight agreed upon search strings.[39]

32.     On September 2, 2022, the Boston UK defendants provided disclosure to Cook (UK) Limited of over a thousand documents in their possession in response to the UK court order.[40]  Due to UK Civil Procedure Rules and confidentiality restrictions placed by the Boston UK Defendants on the disclosure, however, Cook Deutschland is unable to review or use any of the documents in that disclosure in the German Action without the consent of the Boston UK Defendants.[41]

### E.     No Pre-Trial Discovery Is Allowed In Germany

33.     In the German Action, Cook Deutschland is defending itself against BSSI's allegations, but German litigation lacks a formalized means to request and subsequently obtain certain information from the other party.[42]

---

[38] Ex. 6 at ¶¶ 33-34, 38 (Approved Judgement on CMC in the UK Action).

[39] Kanz Decl. at ¶ 16 (discussing Ex. 7 (Order for Directions in the UK Action)).

[40] *Id.* at ¶ 25.

[41] *Id.*

[42] *Id*. at ¶¶ 17-18.

34.     Unlike the U.S. Proceedings and the UK Action, where there are formal discovery procedures, there is no formalized mechanism for pre-trial discovery in a German litigation.[43]  The German Civil Procedure Code (ZPO) provides that a party may request that the other party or a third party be ordered to present a certain, ***specifically-identified*** document.[44]  However, there are no procedural means in a German patent infringement case to seek ***general*** discovery of the internal documents of the other party within the knowledge and possession of the other party.[45]  Such discovery cannot be obtained under German civil procedure rules.[46]

### F.     Cook's Attempts To Reach Agreement With Boston

35.     In view of the lack of pre-trial discovery in German litigation that would otherwise permit the Cook defendants in the German Action to discover Respondents' relevant documents concerning user feedback, U.S. counsel for the Cook Medical group of companies contacted U.S. counsel for Respondents (copying German and UK counsel for the Boston Scientific entities litigating in those countries) on August 19, 2022, "to see if Boston is willing to agree that the parties' respective disclosures in the UK Action shall also be available for use in the German Action by the parties there."[47]  Cook's U.S. counsel stated that "[g]iven the relevance of the disclosures in the UK Action to the assertions of alleged infringement of the '915 Patent, these same materials should also be disclosed for use in the German Action where

---

[43] *Id*. at ¶ 17.

[44] *Id.*

[45] *Id*.

[46] *Id*.

[47] *Id.* at ¶ 19; Ex. 8 at 2 (8/19/22 Email, Nichols to Rajani).

similar assertions of alleged infringement of the '915 Patent are also being pursued by Boston."[48]

36.     In their response dated August 23, 2022, U.S. counsel for Respondents stated that the "question [of whether documents produced in the UK Action may also be available for use in the German Action] goes to UK and German law, and must be directed to Boston Scientific's counsel in those jurisdictions."[49]  U.S. counsel for Respondents further stated that Cook's inquiry was premature, as BSSI had not yet disclosed documents pursuant to the order in the UK Action, and Respondents alleged the need to know the specific documents at issue to "determin[e] whether the material sought is already within the German court's jurisdictional reach, whether Boston Scientific's confidential information is likely to be made public, and whether Cook's Section 1782 request would circumvent the German court's discovery rules."[50]

37.     As requested by U.S. counsel for Respondents, on August 24, 2022, counsel for Cook (UK) Limited contacted counsel for the Boston UK Defendants to inquire "if your clients are willing to agree that the parties' respective disclosure in the UK shall also be available for use in the German proceedings by the parties there."[51]  Counsel for Cook (UK) Limited further stated that "[t]here can be little doubt that such documents will also be relevant to your clients' allegations of infringement in Germany, and whether the UK disclosure includes material

---

[48] Kanz Decl. at ¶ 19; Ex. 8 at 2 (8/19/22 Email, Nichols to Rajani).

[49] Kanz Decl. at ¶ 20; Ex. 8 at 1 (8/23/22 Email, Rajani to Nichols).

[50] Kanz Decl. at ¶ 20; Ex. 8 at 1 (8/23/22 Email, Rajani to Nichols).

[51] Kanz Decl. at ¶ 21; Ex. 9 at 1 (8/24/22 Letter, Powell Gilbert LLP to Simmons & Simmons LLP).

within the German court's jurisdictional reach, would seem to be irrelevant if the parties simply agree that they are available for use in the German proceedings."[52]  Counsel for Cook (UK) Limited further stated that "[i]n any case, we understand from our client's German counsel that there is no discovery mechanism in Germany that would provide for disclosure of these documents.   As to confidentiality, we are willing to work with you to address any confidentiality concerns that your clients or our clients may have regarding use of the UK disclosure in Germany."[53]

38.     Also, on August 24, 2022, Dr. Christine Kanz (German counsel) contacted German counsel for BSSI on behalf of the Cook entities in the German Action to inquire "if your clients are willing to agree that the parties' respective disclosures in the UK shall also be available in Germany for use in this case."[54]  In addition to noting the relevancy of the UK disclosures to the German Action and Cook's willingness to work with Boston to address confidentiality concerns, Dr. Kanz stated that "[a]s you know there is no discovery in Germany, but we note that [Section 1782] requests are still regularly granted in the US with respect to U.S.-based discovery for use in German proceedings and the German courts have no issue with relying on such documents."[55]

39.     On September 1, 2022, counsel for the Boston UK Defendants responded to counsel for Cook (UK) Limited, stating that they would consider the request further, but that

---

[52] Kanz Decl. at ¶ 21; Ex. 9 at 1-2 (8/24/22 Letter, Powell Gilbert LLP to Simmons & Simmons LLP).

[53] Kanz Decl. at ¶ 21; Ex. 9 at 2 (8/24/22 Letter, Powell Gilbert LLP to Simmons & Simmons LLP).

[54] Kanz Decl. at ¶ 22; Ex. 10 at 4 (8/24/22 Email, Kanz to Schubert).

[55] Kanz Decl. at ¶ 22; Ex. 10 at 4 (8/24/22 Email, Kanz to Schubert).

the UK Civil Procedure Rules "restrict[] use of documents disclosed in English proceedings to the English proceedings in which they are disclosed and it is for the German courts to manage the procedure, documents and evidence in their courts."[56]   Counsel for the Boston UK defendants further stated that, "[s]uch disclosure and extensive production of documents is not part of German proceedings."[57]

40.    On September 1, 2022, counsel for BSSI in the German Action sent an e-mail to Dr. Kanz referring her to the letter sent by the Boston UK Defendants that same day,[58] discussed in the preceding paragraph.

41.    To date, BSSI has not disclosed in the German Action any of the user feedback documents that it disclosed in the UK Action, and has refused to permit Cook to use any of those documents in the German Action.   In view of BSSI's and the other Boston entities' unwillingness to agree to make Boston Scientific's disclosure in the UK available for use in the German proceedings, Cook Deutschland is now forced to seek that same discovery through this Section 1782 Application.[59]

---

[56] Kanz Decl. at ¶ 23; Ex. 11 (9/1/22 Letter, Simmons & Simmons LLP to Powell Gilbert LLP).

[57] Kanz Decl. at ¶ 23; Ex. 11 (9/1/22 Letter, Simmons & Simmons LLP to Powell Gilbert LLP).

[58] Kanz Decl. at ¶ 24; Ex. 10 at 1 (9/1/22 Email, Bloser to Kanz).

[59] Kanz Decl. at ¶ 26.

## IV.    ARGUMENT

### A.    Legal Standard

42.    The purpose of Section 1782 is to provide federal court assistance in the gathering of evidence for use in a foreign tribunal.  *Intel*, 542 U.S. at 247.  Section 1782 provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

43.    There are three statutory prerequisites for discovery pursuant to Section 1782 to be granted: (1) the person from whom discovery is sought must reside or be found in the district of the district court where the application is made; (2) the discovery must be for use in proceedings before a foreign tribunal; and (3) the application must be made either by the foreign tribunal or by an interested party.  *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 91 (3rd Cir. 2010).

44.    For purposes of a Section 1782 application, "[a] proceeding includes any proceeding in which an adjudicated function is being exercised or is imminent" and "[a]n interested person includes a party to the foreign litigation, whether directly or indirectly."  *Id.* (quoting *In re Merck & Co.,* 197 F.R.D. 267, 270 (M.D.N.C. 2000)).

45.    Beyond the statutory requirements, the Supreme Court has identified four factors, also referred to as the *Intel* factors, that a district court may consider when determining whether to exercise its discretion and grant a Section 1782 application:

(1)     whether the evidence sought is within the foreign tribunal's jurisdictional

        reach, and thus accessible absent Section 1782 aid;

(2)     the nature of the foreign tribunal, the character of the proceedings

        underway abroad, and the receptivity of the foreign government or the

        court or agency abroad to U.S. federal-court judicial assistance;

(3)     whether the request conceals an attempt to circumvent foreign proof-

        gathering restrictions or other policies of a foreign country or the United

        States; and

(4)     whether the subpoena contains unduly intrusive or burdensome requests.

*In re O'Keefe*, 646 F. App'x 263, 266 (3rd Cir. 2016) (citing *Intel*, 542 U.S. at 264-65).

46.     In exercising their discretion, federal courts, including the Third Circuit, have

given "consistently liberal interpretation" to Section 1782 and its object "to assist foreign

tribunals in obtaining relevant information that the tribunals may find useful but, for reasons

having no bearing on international comity, they cannot obtain under their own laws." *See*

*Essechem*, 390 F. App'x at 92 (quoting *Intel*, 542 U.S. at 262).

47.     As established below, the statutory requirements of Section 1782 are met in this

case, and the *Intel* factors favor the exercise of this Court's discretion to grant Cook

Deutschland's discovery application.

### B.      Cook Deutschland's Application Should Be Granted

#### 1.      Section 1782's Statutory Requirements Have Been Met

48.     Per the first requirement under Section 1782, the persons from whom discovery

is sought in this proceeding, BSC and BSSI, both reside or can be found in this District, where

the application is being made.  In particular, BSC is "a corporation organized and existing

under the laws of the State of Delaware."[60]  Thus, BSC resides in this District.  BSSI represents

itself as "a wholly owned subsidiary of BSC" that "develops and manufactures endoscopic

products for the treatment of diseases of the digestive system, including hemostatic clips, that

BSC distributes," including in this district.[61]  Thus, BSSI also resides or is found in this District

through its connections with BSC.

49.     Further, both Boston Respondents chose this District to file suit against Cook

Group Incorporated and Cook Medical LLC in 2015.  This application is seeking materials

that Respondents already collected and jointly produced in that U.S. Proceeding, and which

are readily, and equally, accessible to each Respondent.  These materials are within each

Respondent's possession, custody or control, as those terms are defined in Federal Rule of

Civil Procedure 34.

50.     Per the second requirement under Section 1782, the information sought in this

application is highly relevant to, and will be used to assist Cook Deutschland in, the pending

German Action, which is a proceeding in a foreign tribunal.  The publicly-disclosed U.S.

documents indicate, among other things, that Respondents do not believe that the Instinct Clip

has the "user feedback" claimed in EP 915, and that Respondents have instructed BSC's sales

force that this is a marketable distinction between Cook's Instinct Clip and Respondents'

Resolution device.[62]  If, consistent with the U.S. documents, Respondents understand that the

Instinct Clip does not, in fact, provide "user feedback," then BSSI should not be permitted to

---

[60] Ex. 12 at ¶ 2 (Complaint in the U.S. Proceedings).

[61] *Id.* at ¶ 3.

[62] Kanz Decl. at ¶¶ 12-13 (discussing Exs. 3-5 (Respondents' public filings re "user feedback")).

conceal from Cook Deutschland or the German court the information, analyses, and other materials underpinning that understanding.  Nor should Respondents be permitted to advance an infringement case based on a position regarding the structure and operation of the Instinct Clip that is entirely at odds with the position that it takes commercially to differentiate its own devices from the Instinct Clip.

51.     Per the third requirement under Section 1782, this application is made by an "interested person."  Cook Deutschland is a party in the pending German Action,[63] and there is "no doubt" that parties to foreign litigations are "interested persons."  *Intel*, 542 U.S. at 256 ("[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782").

52.     As Cook Deutschland has met Section 1782's three statutory requirements, this Court has the discretion to – and should – grant Cook Deutschland's discovery application.

### 2.     The Court Should Exercise Its Discretion And Permit Cook Deutschland To Obtain The Requested Discovery

53.     The *Intel* factors identified by the Supreme Court, though not hard and fast rules, favor granting Cook Deutschland's discovery application, as explained further below.  *Intel*, 542 U.S. at 247, 264-265 ("Whether such assistance is appropriate in this case is a question yet unresolved.  To guide the District Court on remand, we suggest considerations relevant to the disposition of that question.").

54.     Beyond the suggested *Intel* factors, the Court should also consider the overarching principles of Section 1782.  Section 1782 has two aims: (1) to provide efficient

---

[63] *Id.* at ¶ 4.

means of assistance to participants in international litigation in our federal courts; and (2) to encourage foreign countries by example to provide similar means of assistance to our courts. *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2nd Cir. 1992).  To that end, Section 1782 has been described as a "one-way street" that grants wide assistance to others, but demands nothing in return.  *Id.* at 101.  If a court fails to consider this backdrop in analyzing the discretionary *Intel* factors, it risks abusing its discretion.  *Id*. at 101-102.

55.     Further, Section 1782 is "the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel*, 542 U.S. at 247.  While this legislation has undergone many amendments, these amendments have steadily and consistently moved the legislation in the singular direction of providing more discovery for use in more judicial and quasi-judicial forums in connection with more types of proceedings.  *See id.* at 248-49.

56.     Applying the *Intel* factors, and considering the overarching principles behind the statute, this Court should exercise its discretion and permit Cook Deutschland to obtain the discovery it seeks from the Boston Respondents, as further explained below.

### a.     BSSI Is A Party To The German Action, But Discovery Is Unavailable

57.     The first *Intel* factor considers whether Respondents are parties to the foreign proceedings and "[w]hether the discovery sought is within the foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782."  *Esschem*, 390 F. App'x at 91.  In this case, one of the two respondents, BSSI, is a party to the German Action.  BSC is not a party.

58.     Regardless of BSSI's status as a party, however, Cook Deutschland will have no opportunity to seek discovery of the information sought through this application in the pending German Action.  German litigations do not have a mechanism that Cook Deutschland may invoke to obtain the discovery.[64]  In fact, the German Civil Procedure Code ("ZPO") does not incorporate the concept of discovery as it is understood in U.S. procedure.[65]  It is a concept unknown in German civil practice.  *See id.* at 92 ("German civil procedure does not offer a mechanism for general pretrial discovery comparable to that obtainable in the United States; any request to the German court must be for *specific* documents, and without access to [the respondent's] files, [the petitioner] cannot pinpoint what it is seeking.").

59.     There is a provision in the ZPO that permits a party to request that the opposing party or a third party be ordered to present a certain, specifically-identified document.[66]  *Id.*  A general request seeking discovery of BSSI's materials as evidence for the litigation would not be granted.[67]  If the information sought is uniquely within the knowledge and possession of the other party, or restricted due to a protective order, these hurdles simply cannot be overcome.

60.     As other courts have recognized, the unavailability of the requested discovery in the foreign tribunal favors granting a Section 1782 application.  *See Heraeus Kulzer GmbH v. Biomet, Inc.*, 633 F.3d 591, 596 (7th Cir. 2011) (observing that the discovery requested "is

---

[64] *Id.* at ¶ 17.

[65] *Id.*

[66] *Id.*

[67] *Id.*

unobtainable in the German legal system" and that a "party to a German lawsuit cannot demand categories of documents").

61.     Accordingly, this factor weighs in favor of granting Cook Deutschland's application, despite BSSI being a party to the German Action.

### b.     German Courts Are Receptive To U.S. Judicial Assistance

62.     The second *Intel* factor considers the nature of the foreign tribunal and its receptiveness to the discovery being sought.  Under this factor, a party opposing discovery has the burden of demonstrating that the foreign court would not consider the discovery sought pursuant to a Section 1782 order.  *In re Chevron Corp.*, 633 F.3d 153, 162 (3rd Cir. 2011) (citing *In re Bayer AG*, 146 F.3d 188, 196 (3rd Cir. 1998)).  The Boston Respondents cannot meet this burden.

63.     German courts generally receive evidence without regard to its origin, to how it was obtained, or to whether the obtaining was in line with the ZPO, as long as the evidence was not obtained in violation of the basic rights provided in the German constitution.[68]  *See Esschem*, 390 F. App'x at 92; *see also Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 624 (8th Cir. 2016) (explaining that Germany has no general restrictions on litigants' ability to use documents obtained outside the strictures of German procedure).  Further, German law does not preclude using evidence obtained by U.S. discovery procedures in German civil proceedings. [69]

---

[68] *Id.* at ¶ 18.

[69] *Id.*

64.     In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782, this factor weighs in favor of granting a Section 1782 application.  *In re Chevron*, 633 F.3d at 162 (the party opposing discovery "bear[s] the burden of demonstrating offense to the foreign jurisdiction") (citation omitted); *Minatec Finance S.A.R.L. v. SI Group Inc.*, No. 1:08-cv-269-LEK-RFT, 2008 WL 3884374, at \*6-7 (N.D.N.Y. Aug. 18, 2008) (upon finding the absence of authoritative declarations from the forum country's judicial, executive, or legislature addressing the use of evidence obtained by Section 1782, petitioner's request for discovery was granted); *Cryolife, Inc. v. Tenaxis Medical, Inc.*, No. C08-05124, 2009 WL 88348, at \*3 (N.D. Cal. Jan. 13, 2009) (finding no evidence that the German court would not be receptive to assistance under Section 1782 and granting petition).

65.     Accordingly, this factor also weighs in favor of granting Cook Deutschland's application.

### c.     No Foreign Restrictions Bar Cook Deutschland's Requested Discovery

66.     The third *Intel* factor considers whether the foreign jurisdiction has proof-gathering restrictions that might be improperly circumvented if the discovery request is granted.  Proof-gathering restrictions, as that phrase is used in *Intel*, "are best understood as rules akin to privileges that ***prohibit*** the acquisition or use of certain materials, rather than as rules that ***fail to facilitate*** investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information."  *See Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2nd Cir. 2015) (emphasis in original).

67.    Germany has no such prohibitive proof-gathering restrictions.    While Germany's rules do not permit a litigant access to the same types of discovery available in the U.S., "the German court [hearing the German Proceeding] does not restrict receipt of the evidence sought."  *Esschem*, 390 F. App'x at 92; *see also Cryolife*, 2009 WL 88348, at *4 (finding the third *Intel* factor favored discovery for use in German litigation, because "the mere fact that the discovery is unavailable under foreign law is not a basis for denying its application") (citation omitted).[70]

68.    Further, "there is nothing to suggest that the German court would be affronted by" Cook Deutschland's use of Section 1782 "or would refuse to admit any evidence . . . that the discovery produced."  *Biomet*, 633 F.3d at 597.  To the contrary, German courts have welcomed information resulting from Section 1782 proceedings.  *See, e.g.*, *Esschem*, 390 F. App'x at 92; *In re LG Elecs. Deutschland GmbH*, No. 12-cv-1197, 2012 WL 1836283, at *2 (S.D. Cal. May 21, 2012).  Because Germany has "adopted limited discovery rules but allow[s] parties to use broader discovery obtained pursuant to § 1782, [the third *Intel*] factor militates in favor of granting § 1782 relief."  *In re Macquarie Bank Ltd.*, No. 2:14-cv-0797, 2014 WL 7706908, at *3 (D. Nev. June 4, 2014).

69.    Accordingly, this factor also weighs in favor of granting Cook Deutschland's application.

### d.    Cook Deutschland's Request Is Not Unduly Burdensome

70.    The fourth *Intel* factor analyzes whether the discovery requests are "unduly intrusive or burdensome," as such requests "may be rejected or trimmed."  *Intel*, 542 U.S. at

---

[70] *Id.* at ¶¶ 17-18.

265. "The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure." *In re Varian Medical Sys. Int'l AG*, No. 16-mc-80048, 2016 WL 1161568, at *5 (N.D. Cal. Mar. 24, 2016) (citing *In re Letters Rogatory From Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994)). Requests are not unduly burdensome when they target limited categories of documents. *See In re Grupo Unidos Por El Canal, S.A.*, No. 14-mc-80277, 2014 WL 5456520, at *3 (N.D. Cal. Oct. 27, 2014) (finding petitioner's request not unduly burdensome because its "nine document requests target specific, limited categories of documents").

71. Here, Cook Deutschland's discovery requests are not unduly burdensome or intrusive and target a defined collection of documents that BSSI has ***already collected and produced*** (or will be required to collect and produce) in the UK Action.[71]  There will be very little additional burden, if any, on Respondents to provide these same materials to Cook Deutschland for use in the German Action.  Moreover, Cook Deutschland's attorneys are willing to meet and confer with attorneys for the Respondents to discuss ways of obtaining the relevant information as efficiently and with as little burden as possible.[72]

72. Accordingly, this factor also weighs in favor of granting Cook Deutschland's application.

## V.    CONCLUSION

Cook Deutschland's application meets the statutory requirements of 28 U.S.C. § 1782, and the discretionary factors the Supreme Court identified in *Intel* weigh in favor of granting

---

[71] *Id.* at ¶¶ 25-26.

[72] *Id.* at ¶¶ 27-30.

the application.  Accordingly, Cook Deutschland respectfully requests that this Court grant the application and issue the proposed order attached as Exhibit A, requiring Respondents to respond to the subpoena attached as Exhibit B.  Cook Deutschland also requests that the Court issue an order to show cause to set a schedule for a decision on the application and any objections of Respondents to the subpoena.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Jeff Nichols
Jason Schigelone
Andrew McElligott
Mary LaFleur
CROWELL & MORING LLP
455 N. Cityfront Plaza Drive
NBC Tower, Suite 3600
Chicago, IL 60611
Tel: (312) 321-4200

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Brandon R. Harper (#6418)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    bharper@potteranderson.com

Dated:  September 12, 2022
10334489 / 22511.00001

*Attorneys for Petitioner*
*Cook Deutschland GmbH*